UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:22-CV-P158-JHM

**JEREMY M. BARTLETT**                                                        **PLAINTIFF**

**v.**

**NURSE GARY SKAGGS,** *et al.*                                        **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the motion for summary judgment filed by Defendants Nurse Gary Skaggs and Nurse Practitioner Roy Washington. (DN 37). Plaintiff Jeremy M. Bartlett filed a response to the motion (DN 41), and Defendants filed a reply. (DN 43). For the following reasons, the motion for summary judgment will be granted.

**I**.

Plaintiff, proceeding *pro se*, commenced this 42 U.S.C. § 1983 action against Grayson County Detention Center (GCDC) correctional and medical staff alleging numerous violations of his constitutional rights. (DNs 1, 13). Plaintiff was a pretrial detainee at GCDC at the time he commenced this action. (*Id.*). Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Fourteenth Amendment deliberate indifference and state-law negligence claims to proceed against Defendants in their individual capacities. (DN 16).

Plaintiff's amended complaint alleged that he was a federal pretrial detainee housed at GCDC since October 15, 2021. (DN 13, PageID.64). He alleged that he has been "denied adiquite medical attention. I have hepititis C, since I have been here I have not received any kind of medical attention for this potentially fatal disease, it has been totally ignored, yet I have made staff fully awhere of it." (*Id.*, PageID.67-68). He also stated that,

> [W]hen I came here I had a bullet in my left thigh, it has caused me
> pain and suffering since being here.  I had informed the staff that it
> was coming out and getting infected, over a process of the last year
> it has ripped its way through my skin, and finally popped out on its
> own.  It was completely ignored by the medical staff.

(*Id*., PageID.68).  Plaintiff concluded, "The failure of defendants . . . to provide for the removal of

a bullet in the plaintiffs left thigh, and the care and treatment of the plaintiff Hep-C, constitutes

deliberate indifference to the plaintiff's serious medical needs . . . ." and also "constitutes the tort

of negligence under the law of the State of Kentucky." (*Id*., PageID.70-71).

## II.

### A.

Defendants now move for summary judgment on the grounds that Plaintiff's Fourteenth

Amendment deliberate indifference claim fails on the merits, and alternatively, that they are

entitled to qualified immunity.  (DN 37-1, PageID.202-207).  They also argue that Plaintiff's claim

is subject to dismissal pursuant to the Prison Litigation Reform Act (PLRA) based upon his failure

to exhaust administrative remedies.  (*Id*., PageID.207-208).

In support of their motion, Defendants submit Plaintiff's medical screening questions from

his arrival at GCDC; his Individual Custody/Detention Report; GCDC Health Assessment;

Prisoner in Transit Medical Summary; medical progress notes from GCDC; sworn affidavits of

Defendant Skaggs and Grayson County Jailer Jason Woosley; and U.S. Marshals Service Medical

Submission Forms.  (DN 37-2, PageID.210-226).

### B.

In Plaintiff's response to the motion for summary judgment, he avers that Defendants'

evidence supports his position and their statements constitute admissions of "guilt" with respect to

the purported absence of medical treatment for Plaintiff's conditions of Hepatitis C (HCV)[1] and a gunshot wound to his left leg.  (DN 41, PageID.237).  Plaintiff argues that because Defendants were aware of these conditions, their "failure to follow up, and do their due diligence, as their job requires . . . constitute deliberate indifference" to his serious medical needs.  (*Id*., PageID.238).  He further argues that he filed "three grievance forms on this matter . . . . It is common practice at [GCDC] for the guards, who take the forms, to just throw them away.  It is also common practice for those guards to retaliate, and place inmates who file grievance forms in max security as a punishment for filing a grievance."  (*Id*., PageID.239).  To that end, he asserts that he fulfilled his obligation under the PLRA's exhaustion requirement because the handling of grievances at GCDC is "beyond his control."  (*Id*.).  In support of his response, Plaintiff attaches his private medical records from before his incarceration, a sworn affidavit, and a proposed witness list.  (DN 41-1 to 41-3).

## C.

In their reply, Defendants reiterate the arguments presented in their memorandum of law filed with their motion for summary judgment.  They also argue that Plaintiff's evidence, specifically his medical records, do not establish the existence of a serious medical need or support a finding of deliberate indifference by Defendants.  (DN 43, PageID.298-300).

## III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a

---

[1] The Court uses the terms "Hepatitis C" and "HCV" interchangeably herein.

3

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## IV.

## A.

The Court first addresses Defendants' argument that Plaintiff failed to exhaust his administrative remedies under the PLRA. (DN 37-1, PageID.207-208).

The PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). A plaintiff must "make 'affirmative efforts to comply with the administrative procedures.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223–24 (6th Cir. 2011)).

The PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Doe 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Moreover,

> [B]ecause an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the defendants have the burden to plead and prove by a preponderance of the evidence, "[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust."

*Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (quoting *Snyder*, 945 F.3d at 961).

Defendants contend that Plaintiff "never availed himself of the grievance procedure, having not filed any grievance while incarcerated at GCDC." (DN 37-1, PageID.207). They point to the affidavit of Jailer Woosley, who attests that GCDC has a grievance procedure in place, and that after reviewing Plaintiff's inmate file, he determined that Plaintiff "never filed a grievance of any sort against the Grayson County Detention Center and/or any of its employees, and he specifically never filed a grievance associated with medical care." (DN 37-2, PageID.225).

Plaintiff's response, which is sworn under penalty of perjury, states that he filed three grievance forms relating to his medical care, but "what happened to those forms, the Plaintiff

cannot say.  It is common practice at [GCDC] for the guards, who take the forms, to just throw them away." (DN 41, PageID.239).

The Court is unable to discern whether Plaintiff's broad assertions that grievances at GCDC are discarded and trigger retaliatory actions by guards is based upon personal knowledge.  He does not identify how he filed his grievances or against whom, or which guard was responsible for throwing his (or other inmates') grievances away.  Nor does he state that he was personally retaliated against for filing a grievance.  Generally, averments like these would be insufficient to create a genuine issue of material fact.  *See Wilson v. Robinson*, No. 3:22-CV-158, 2023 WL 8934653, at *6 (E.D. Tenn. Dec. 27, 2023) ("Plaintiff's general assertions in his complaint that the unspecified grievance procedure he utilized to file a grievance . . . is 'not credible' and 'they throw [the grievances] away' are not sufficient to create a genuine issue of material fact regarding his exhaustion of his available administrative remedies.  Specifically, Plaintiff does not indicate he has personal knowledge that anyone threw away his grievance or that any person threw away other prisoners' grievances.  And statements outside of Plaintiff's personal knowledge do not create a genuine issue of material fact that would preclude summary judgment."); *see also Napier v. Laurel Cnty., Ky.*, 636 F.3d at 222 (exhaustion is required even if a prisoner subjectively believes that the remedy is not available, he believes the procedure to be ineffectual or futile, or when the state cannot grant the particular relief requested) (internal citations omitted).

However, where a "'plaintiff contends that he was prevented from exhausting his remedies,' the defendant must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'"  *Lamb*, 52 F.4th at 295 (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)).  Defendants have not responded to Plaintiff's assertions regarding his exhaustion attempts.  They do not outline the GCDC grievance procedure, nor do they produce a copy of the

jail's inmate grievance policy. Mindful that Defendants have the burden to plead and prove a plaintiff's failure to exhaust administrative remedies, the parties' "competing declarations," and in the absence of any other evidence relating to exhaustion, summary judgment in favor of Defendants on the issue of exhaustion is inappropriate. *See id.* at 292, 298; *see also Young v. Mulvaine*, No. 22-3733, 2023 WL 5665755 (6th Cir. June 23, 2023) (affirming denial of summary judgment where the parties' competing affidavits created a factual dispute related to exhaustion); *see also*, *e.g.*, *Pullen v. Tabor*, No. 1:20-CV-00050, 2024 WL 3821927, at \*9 (S.D. Ohio Aug. 13, 2024), *report and recommendation adopted*, 2024 WL 4297518 (S.D. Ohio Sept. 26, 2024) ("Where there are competing affidavits, neither of which is blatantly contradicted by objective evidence, there is necessarily a dispute of fact."). Here, Defendants have not presented significant probative evidence "so powerful that no reasonable jury would be free to disbelieve" Plaintiff's allegations that his administrative remedies were unavailable. *Lamb*, 52 F.4th at 298 (internal quotation marks omitted). Accordingly, a material issue of fact precludes summary judgment on the issue of exhaustion.

**B.**

Turning to the merits, the Court addresses Defendants' argument that Plaintiff's deliberate indifference claim fails as a matter of law. (DN 37-1, PageID.202-205).

The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Therefore, when a pretrial detainee asserts a claim related to medical treatment, the claim is analyzed under the Fourteenth Amendment. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566-67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)). The Fourteenth Amendment deliberate indifference standard

has both an objective and a subjective component.  *Helphenstine v. Lewis Cnty., Kentucky*, 60

F.4th 305, 316-317 (6th Cir. 2023), *cert. denied*, ⸺ U.S. ⸺, 144 S. Ct. 692 (2024).

As recently explained by the Sixth Circuit,

> The standard in this circuit to prove a deliberate-indifference claim
> brought under the Fourteenth Amendment by a pretrial detainee is
> clear.  To make out such a claim, a plaintiff must demonstrate (1) an
> objectively serious medical need;  and (2) that the defendants,
> analyzed individually, acted (or failed to act) intentionally and either
> ignored the serious medical need or "recklessly failed to act
> reasonably to mitigate the risk the serious medical need posed."
> *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022)
> (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)
> *cert. denied*, ⸺ U.S. ⸺, 143 S. Ct. 84 (2022)).    Stated
> differently, a pretrial detainee must have a serious medical need, and
> the defendant must act, whether through intentional action or
> omission, recklessly in response to the need and the risk it presented
> to the detainee.  *See Helphenstine*[,] 60 F.4th at 317.

*Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023); *see also Mercer v. Athens Cnty.*, 72 F.4th

152 (6th Cir. 2023) (discussing departure from analyzing Eighth and Fourteenth Amendment

deliberate indifference claims under the same rubric following *Kingsley* and *Brawner*, *supra*).

Under the post-*Brawner* framework, the first question is whether the plaintiff had a serious

medical need, which has been defined as "'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention.'"  *Vontz v. Hotaling*, No. 2:19-CV-12735, 2023 WL 2881350,

at  *6  (E.D.  Mich.  Mar.  6,  2023),  *report  and  recommendation  adopted*,

No. 219CV12735TGBKGA, 2023 WL 2873347 (E.D. Mich. Apr. 10, 2023) (quoting *Blackmore

v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)) (other citations and quotations omitted).

In cases involving only "minor maladies or non-obvious complaints of a serious need for medical

care," or where the deliberate indifference claim is based on the prison's failure to treat a condition

adequately, then the plaintiff must also submit verifying medical evidence to satisfy the objective

component.  *Blackmore*, 390 F.3d at 898; *see also Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

 "As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation, either under the Eighth or the Fourteenth Amendment."  *Vontz*, 2023 WL 2881350, at *6 (citing *Brawner*, 14 F.4th at 596) (stating that a plaintiff must show "more than negligence"); *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (other citations omitted)).

Plaintiff's amended complaint alleges that he has Hepatitis C and a bullet in his left thigh. (DN 13, PageID.67-68).  He claims that the medical providers at GCDC were aware of these conditions but did not provide any medical attention.  (*Id*.).  He asserts that Defendants' failure to remove the bullet from his left leg and provide care and treatment for his Hepatitis C constitutes deliberate indifference.  (*Id*., PageID.70-71).

Defendants assert that Plaintiff fails to meet the objective component of the deliberate indifference test because he has not proffered evidence that a physician has ordered treatment or medical proof that treatment should have been administered for his conditions. (DN 37-1, PageID.204).  Additionally, they aver that Plaintiff fails to meet the subjective component because his medical needs were reasonably attended to during his detention at GCDC. (*Id.*, PageID.205).

Plaintiff relies upon Defendants' knowledge of his existing medical conditions of Hepatitis C and left leg gunshot wound, arguing that Defendants should have ordered his private medical records, which he claims would have established that his Hepatitis C levels were "extremely high prior to his arrest in early 2021." (DN 41, PageID.238). Plaintiff's complaint alleges that he did not receive any medical attention for his chronic Hepatitis C and that medical staff ignored the bullet in his leg, which he claims was "coming out and getting infected" and eventually "popped out on its own," causing pain and suffering. (DN 1, PageID.67-68).

In support of their motion, Defendants submit Plaintiff's GCDC screening questionnaire, dated October 15, 2021, on which Plaintiff reported having Hepatitis C. (DN 37-2, PageID.210-211). Plaintiff indicated that there were no current medications and no medications that would need to be continued during his detention at GCDC. (*Id*., PageID.209-210). Progress notes from GCDC show eight medical encounters, none of which include complaints or symptoms related to Hepatitis C or left leg wound. (*Id*., PageID.216-217). A GCDC Health Assessment form dated December 6, 2021, reveals a positive history of "problems with liver – Hep C" and surgery for "left leg gun shot 1994." No current health problems were reported, and amlodipine was listed as a medication.[2] (*Id*., PageID.213-214). US Marshals Service Medical Submission forms indicate that Plaintiff had bloodwork performed on March 17, 2022, the results of which are not present in the record. (*Id*., PageID.220-224).

Plaintiff's evidence consists of his private medical records from Ascension Medical Group in North Vernon, Indiana. (DN 41-1). A record dated November 3, 2017, reveals that Plaintiff established care with the practice and shows no medications and normal examination results. At

---

[2] "Amlodipine is used alone or in combination with other medications to treat high blood pressure in adults and children 6 years and older. It is also used to treat certain types of angina (chest pain) and coronary artery disease (narrowing of the blood vessels that supply blood to the heart)." *See* https://medlineplus.gov/druginfo/meds/a692044.html (last accessed October 25, 2024).

that visit, Plaintiff complained of low energy and low libido, and inquired about getting his testosterone checked.  (*Id*., PageID.241-243).  He reported both positive and negative Hepatitis C tests in the past and sought to be tested again.  (*Id*., PageID.242).  HIV and Hepatitis C screening was ordered, and Plaintiff was ordered to follow-up in one year for an annual wellness examination.  (*Id*.).  Plaintiff's bloodwork from November 8, 2017, revealed a Hepatitis C viral load of 74,834, but there is no interpretation of those results in Plaintiff's documentary submissions.  (*Id*., PageID.244-245).

The next private medical record is dated June 18, 2018, when Plaintiff reported chest pain and fluttering heart.  (*Id*., PageID.259-261).  Plaintiff's examination results were normal, and he was referred to cardiology.  (*Id*.).  Medications were listed as Epclusa[3] and testosterone.  (*Id.*, PageID.259).

Finally, an encounter dated January 12, 2021, revealed no complaints, high blood pressure, and medications of amlodipine and triamcinolone.[4]  (*Id*., PageID.249).  Plaintiff reported being "shot in his upper left thigh about 1 year ago.[5]  States the bullet is still inside.  He was put on antibiotics at the time of the injury.  States it has healed pretty well but he now has a lump at spot where the bullet went into his leg."  (*Id*., PageID.251).  Plaintiff was diagnosed with hypertension, nicotine dependence, history of methamphetamine abuse, eczema, hyperlipidemia, injury of right shoulder, history of Hepatitis C, localized swelling/lump in upper left thigh, and obesity.  (*Id*., PageID.253).  With respect to history of Hepatitis C, it was noted, "+ antibody in 2017 with no

---

[3] Epclusa is a brand name for sofosbuvir and velpatasvir, the combination of which is used to treat chronic Hepatitis C, taken once per day for 12 weeks.  *See* https://medlineplus.gov/druginfo/meds/a616034.html (last accessed October 25, 2024).

[4] Triamcinolone is a corticosteroid used to treat various skin conditions.  *See* https://medlineplus.gov/druginfo/meds/a601124.html (last accessed October 25, 2024).

[5] The Court notes, and Plaintiff does not reconcile, the discrepancy in the record as to when he was shot in the leg.

treatment[;] recommend recheck with follow-up labs, if needed." (*Id.*).  Testing performed on January 13, 2021, included an ultrasound of the upper left thigh which revealed "foreign body reaction." (*Id.*, PageID.254).  A Hepatitis C antibody panel was reactive. (*Id.*, PageID.258).  There is no interpretation or discussion of these results in Plaintiff's submissions.

The parties do not dispute that Plaintiff did not receive medical treatment relating to his upper left leg or his chronic Hepatitis C while he was detained at GCDC.

Defendants argue that Plaintiff has not proffered evidence that a physician has ordered treatment or medical proof that treatment should have been administered for his conditions, thereby failing to satisfy objective component of a serious medical need.  (DN 37-1, PageID.204).  The Court agrees that Plaintiff has not established the objective component of his deliberate indifference claim, addressing his conditions in turn.

1.

With respect to the gunshot wound to Plaintiff's leg, the record establishes, and Plaintiff does not dispute, that he did not seek treatment for or report any symptoms relating to his left thigh during his detention at GCDC, despite multiple medical encounters.  (DN 37-1 to 37-2).

First, Plaintiff's chronic pain stemming from a years-old gunshot wound, is insufficient to meet the objective component under *Blackmore*'s "obviousness" standard.  *See Blackmore*, 390 F.3d at 897 (defining "objectively serious" medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); *see also Dearing v. Mahalma*, No. 1:11-cv-204, 2013 WL 8696751, at *7 (S.D. Ohio Oct. 7, 2013), *report and recommendation adopted sub nom. Dearing v. Institutional Inspector Mahalma*, No. 1:11-CV-204, 2014 WL 2812736 (S.D. Ohio June 23, 2014) ("The fact that Plaintiff's chronic neck pain originated from a more acute injury

12

(his pre-incarceration gunshot wound) does not transform that chronic pain itself into an 'obvious' or life-threatening acute medical event."). Nor does the record establish that Plaintiff's condition was diagnosed by a physician as mandating treatment for the bullet fragment in his left thigh. Instead, Plaintiff's private medical records reveal an assessment of a localized swelling mass and lump of the lower limb on January 12, 2021. (DN 41-1, PageID.251). An ultrasound performed on January 13, 2021, revealed a foreign body reaction in Plaintiff's left thigh, but the record does not identify a follow-up with his primary physician or a course of treatment ordered for his condition. (*Id*., PageID.254). Accordingly, the pain and lump resulting from the bullet fragment in Plaintiff's leg does not constitute a serious medical injury because there is no evidence that it required medical intervention. *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (explaining that "latent medical injuries" require a showing that the delay in treatment caused a serious medical injury and that "[t]he ability to satisfy the objective prong with a showing that the injury was diagnosed by a physician who mandated treatment necessarily contemplates the diagnosis being made before the defendant's alleged deliberate indifference").

Second, the existence of pain alone, absent evidence of any risk to Plaintiff's health, does not constitute a serious medical need. *Browder v. Hopkins Cnty*., No. 4:22-CV-00065-JHM, 2023 WL 5192034, at *6 (W.D. Ky. Aug. 11, 2023); *see also Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *5 (6th Cir. Feb. 24, 2017) (plaintiff's assertion that he was in pain while he waited to be seen by a dentist does not establish that he suffered a sufficiently serious medical condition); *Mays v. Pynnonen*, No. 2:17-CV-167, 2019 WL 4439367, at *1 (W.D. Mich. Sept. 17, 2019) (plaintiff's subjective complaints of pain will not satisfy the objective prong of the deliberate indifference standard).

Even if Plaintiff's chronic pain from the bullet fragment was a serious medical need, he has not produced verifying medical evidence that the lack of medical treatment at GCDC resulted in any serious medical injury. "[A] prisoner suffering from pain must show that a delay in receiving treatment had a detrimental effect." *Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) ("Even if Dixon's pain constituted a serious medical need, he failed to present verifying medical evidence that the delay in providing him with pain medication, x-rays, or outside medical help caused any serious medical injury."); *see also Blackmore*, 390 F.3d at 898 ("[T]he 'verifying medical evidence' requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care.") (quoting *Napier v. Madison Cnty.*, 238 F.3d at 742, *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024)). Although Plaintiff asserts that Defendants should have removed the bullet fragment from his leg, he provides no verifying medical evidence to that end and as such, fails to raise a genuine dispute as to the objective component of his deliberate indifference claim. *See Taylor v. Well Path Med.*, No. 3:22-CV-00705, 2024 WL 3897449, at *8 (M.D. Tenn. Aug. 20, 2024) (granting summary judgment where pretrial detainee did not present an urgent or acute medical need and detainee failed to support his contention that he should have been provided with different or more prompt treatment with any type of expert medical testimony).

2.

The record establishes, and the parties do not dispute, that Plaintiff has a history of HCV. While it is well-settled that Hepatitis C may represent a serious medical need, *see Atkins v. Parker*, 972 F.3d 734, 739 (6th Cir. 2020); *Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 662 (6th Cir. 2021), the Sixth Circuit has also noted that "Hepatitis C does not require treatment in all

cases." *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 n.1 (6th Cir. 2006); *accord Allen v. Shawney*, No. 11-10942, 2014 WL 1089618, at *11 (E.D. Mich. Mar. 18, 2014) ("Hepatitis C can be a serious medical condition mandating treatment.  However, not all cases of Hepatitis C require treatment.").  Accordingly, district courts within this Circuit have analyzed HCV that is asymptomatic or does not require treatment as a non-obvious, chronic condition (as opposed to an acute injury), requiring a plaintiff to present evidence to establish the detrimental effect of the delay in treatment.  *See Stanford v. Hadden*, No. 3:11-CV-240, 2013 WL 3146969, at *4 (E.D. Tenn. June 19, 2013) (granting summary judgment where Plaintiff failed to place verifying medical evidence in the record); *Owens v. Ray*, No. 3:13-CV-245, 2014 WL 415053, at *5 (E.D. Tenn. Feb. 4, 2014) (same); *Villarreal v. Holland*, No. CV 14-9-DLB, 2016 WL 208310, at *8 (E.D. Ky. Jan. 15, 2016) (same); *Raub v. Corr. Med. Servs., Inc.*, No. CIV.A. 06-13942, 2008 WL 5598325, at *11 (E.D. Mich. Nov. 7, 2008), *report and recommendation adopted*, No. 06-13942, 2008 WL 5572634 (E.D. Mich. Dec. 23, 2008) (same).

Plaintiff's history of Hepatitis C was noted on the GCDC medical screening questionnaire by Defendants upon booking on October 15, 2021, and again during a health assessment on December 6, 2021.  (DN 37-2, PageID.210-214).  However, there is no evidence that Plaintiff required medication for HCV, and the record is silent as to complaints or reports of HCV symptoms by Plaintiff, despite being seen by medical staff on numerous occasions for unrelated issues.  (DN 37-2).  Indeed, Plaintiff does not allege that he had any symptoms or complications of HCV that went untreated while detained at GCDC, nor does he identify any type of treatment, management, or screening that he believes he should have received from Defendants.  There is therefore nothing in the record to suggest that Plaintiff required treatment for HCV or that Plaintiff had a serious medical need related thereto.  *See Weavel v. Pleasant*, No. 4:12CV-P75-M, 2013 WL

3984566, at \*3—4 (W.D. Ky. Aug. 1, 2013) ("Here, Plaintiff has not shown that a serious medical need was not being addressed by Defendant.  Because Hepatitis C does not automatically require treatment simply by virtue of having the diagnosis, and because Plaintiff has not shown that he complained to Defendant of any symptoms of Hepatitis C, Defendant is entitled to summary judgment on Plaintiff's [deliberate indifference] claim relating to his Hepatitis C."); *see also Bower v. Aiken*, No. 2:21-CV-226, 2022 WL 575332, at \*6 (W.D. Mich. Feb. 25, 2022) (dismissing for failure to state a claim, where, "other than stating that he suffers from Hepatitis C, Plaintiff provides no allegations regarding his condition or his symptoms that might permit the Court to infer that his condition is sufficiently serious to warrant the treatment he desires").

As for Plaintiff's evidence, the most recent Hepatitis C viral load test was in 2017, and he last received antiviral medication in 2018.  (DN 41-1, PageID.244, 259).  Although Plaintiff posits that his viral "levels were extremely high prior to his arrest in early 2021," the only evidence pertaining to his HCV in 2021 is an antibody panel blood test, which simply states, "reactive, confirmation necessary," and does not indicate a viral load or contain an interpretation or assessment relating thereto.  (*Id.*, PageID.258).  He does not describe the significance of these test results or how they relate to his condition at any time covered by this litigation, and he provides no details as to his current symptoms, treatment, or status of his condition.  As a result, Plaintiff has failed to present any evidence, much less verifying medical evidence (*e.g.*, expert testimony) showing that, due to the absence of treatment at GCDC, he suffered a serious medical injury, complication, or exacerbation relating to his Hepatitis C.  *See Allen*, 2014 WL 1089618, at \*12 ("[Plaintiff] has not identified any biopsies, ultrasounds, blood tests, consultation notes, examination notes, or any other record in the evidence suggesting that she has suffered a harm due to the delay . . . . Ultimately, Plaintiff has not demonstrated that she has a sufficiently serious

medical need."). Accordingly, the evidence produced by Plaintiff is insufficient to create a triable issue as to the objective component. *See Hutchins v. Pollack*, No. 1:22-CV-950, 2024 WL 3290840, at *7 (W.D. Mich. Feb. 29, 2024), *report and recommendation adopted*, No. 1:22-CV-950, 2024 WL 2827831 (W.D. Mich. June 4, 2024) (granting summary judgment on pretrial detainee's deliberate indifference claim for failure to present verifying evidence of a detrimental delay in treatment for chronic epilepsy).[6]

3.

Having found that Plaintiff has failed to set forth the objective component of a Fourteenth Amendment violation, the Court need not address the subjective prong. Even so, Plaintiff does not identify any specific acts or omissions by the individual Defendants that could establish the requisite state of mind for the subjective component of his claim. Instead, he emphasizes Defendants' failure to obtain his personal medical records from his primary care physician as the basis for a finding of deliberate indifference. (DN 41, PageID.238). Assuming the truth of Plaintiff's sworn statement, this is insufficient to create a genuine dispute as to the subjective component. The Sixth Circuit has held that failure to check medical records is "negligence at most." *Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) ("While perhaps in hindsight [defendant] should have checked [inmate's] medical history records, her failure to do so is negligence at most."); *see also Griffith v. Correcthealth Kentucky, LLC*, No. CV 15-5-DLB-EBA, 2017 WL 3749775, at *9 (E.D. Ky. Aug. 30, 2017) (medical providers' "failure to request and review all potentially pertinent medical records" does not amount to deliberate indifference). Even under the modified subjective component applicable to pretrial detainees, Plaintiff at most establishes negligence by the individual Defendants, which is insufficient to withstand summary

---

[6] Given that Plaintiff has not shown a genuine issue of material fact with respect to the objective component of his claim, the Court need not reach the Defendants' assertion of qualified immunity.

judgment.  *See Brawner*, 14 F.4th at 597 (under the subjective component, a pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard") (internal quotation marks omitted).

For these reasons, Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim is granted.

C.

Having granted summary judgment for Defendants as to the federal law claims against them, to the extent that Plaintiff alleges a state-law negligence claim (DN 13 PageID.70-71; DN 16, PageID.95), the Court will dismiss it.  *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims").

V.

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 37) is **GRANTED**. The Court will enter a separate Judgment dismissing the action.

Date:     October 29, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.015